1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CARLOS RAMIREZ,                                    CASE NO. 06cv0546 JM(NLS)

12                                    Plaintiff,        ORDER GRANTING IN PART AND
                                                        DENYING IN PART
13          vs.                                         DEFENDANT'S MOTION FOR
                                                        SUMMARY JUDGMENT
14   R. JAMES NICHOLSON, in his official
     capacity as Secretary of Veterans Affairs,

15                                    Defendant.

16

17          Defendant R. James Nicholson, Secretary of Veterans Affairs, moves for

18   summary judgment on Plaintiff Carlos Ramirez's employment discrimination

19   complaint.  Plaintiff opposes the motion.  For the reasons set forth below, the motion

20   for summary judgment is granted in part and denied in part.  The court grants summary

21   judgment in favor of Defendant on all claims except the claim arising from Plaintiff's

22   March 14, 2005 demotion.

23                                  **BACKGROUND**

24          On March 14, 2006 Plaintiff commenced this employment discrimination action

25   seeking relief from alleged age and national origin discrimination and review of the

26   administrative decision of the Merit Systems Protection Board ("MSPB") denying his

27   claims of discrimination.  Plaintiff is presently a 73 year old Filipino who, in "1987,

28   went to work for the Department of Veteran's Affairs ("DVA") as a file clerk (GS-3)."

1  (Compl. ¶¶6-8).  Over the years, Plaintiff was promoted and achieved the pay grade of
2  GS-13.  (Compl. ¶7).

3       In mid-2002 Plaintiff began to socially interact with a Caucasian female co-
4  worker, Ms. Pastorek,  who was about 20 years younger than Plaintiff.  (Compl. ¶¶10-
5  11).  Plaintiff "felt that he needed to inform management of the situation because this
6  female coworker was one of plaintiff's subordinates." (Compl. ¶11). Plaintiff informed
7  his second level supervisor, Michael Dusenberry, of the situation.   Plaintiff was
8  informed by Dusenberry that Plaintiff should tell his first line supervisor, Mark Daniels,
9  of the situation so that either plaintiff or his girlfriend could be moved out of the same
10 chain of command.   (Compl. ¶12).   When informed of the relationship, Daniels
11 allegedly became agitated and shouted at Plaintiff. (Compl. ¶14).  Almost immediately
12 thereafter, Plaintiff alleges that, among other things, he suffered the following adverse
13 consequences: in 2003 he was subjected to an unjustified formal reprimand, he was
14 transferred to a different work section, his work was ignored, he was required to provide
15 weekly written reports on his work, there was a proposal to terminate his employment,
16 and he was placed on a Performance Improvement Plan ("PIP").  Id.  In 2004, Plaintiff
17 was subjected to further alleged acts of harassment consisting of a continuation of the
18 PIP, the denial of a pay grade increase, and a demotion.

19      In May 2004 Plaintiff contacted a DVA Equal Employment Opportunity ("EEO")
20 Counselor and thereafter filed a formal complaint of discrimination with the DVA.
21 (Compl. ¶16).  After exhausting his claims within the DVA, on June 28, 2005 plaintiff
22 filed a "mixed case" appeal to the MSPB.  (Compl. ¶16).  On February 14, 2006 the
23 MSPB issued a decision adverse to Plaintiff.  Id.

24      The parties do not dispute the following background facts.  Shortly after Plaintiff
25 informed management about his relationship with Ms. Pastorek, Plaintiff was
26 transferred to a then recently vacated Triage Team Coach position in April 2003.
27 Plaintiff agreed to the transfer as he recognized that he and Ms. Pastorek could not work
28 in the same chain of command.  The Triage Coach position did not affect Plaintiff

1  financially.

2      Following the transfer and at all relevant times, Barbara Meyers was Plaintiff's

3  immediate supervisor, and Mark Daniels her immediate supervisor.  Mark Daniels

4  supervised about 180 employees and was the direct supervisor of Barbara Meyers.[1]

5  Between April 16, 2003 and March 15, 2004 Plaintiff was subjected to 27 complained

6  of acts consisting of reprimands, suspensions, Report of Contacts ("ROC"), Letters of

7  Counseling, Extension of the Performance Improvement Plan , Admonishments, denial

8  of within grade pay increase, and lastly, on March 15, 2004 Plaintiff was demoted to

9  a GS-11 pay grade position as a Senior Veterans Service representative. (Exhs. M, AW,

10  Z, AA, Y, AB, AX, AC, AD, AE, AF, AG, AH, AL, AK, AL, AM, AN, AO, AP, AQ,

11  AR, AS, AT, AU, AZ, AV).  Plaintiff continues to work at the GS-11 pay grade.  The

12  parties also do not dispute that prior to Plaintiff's promotion to Team Coach, and after

13  his demotion, Plaintiff received fully satisfactory to excellent work-related appraisals.

14      Based upon the above generally described conduct, Plaintiff alleges two claims

15  for discrimination based on age and race or national origin.  Plaintiff challenges his

16  demotion and alleged workplace harassment under the Age Discrimination in

17  Employment Act ("ADEA"), 29 U.S.C. §621 et seq., as amended;  Title VII of the Civil

18  Rights Act, as amended, 42 U.S.C. §2000e-20003(16) (based on national origin); and

19  the Civil Service Reform Act ("CSRA"), codified in various sections of Title 5 of the

20  United States Code.   Plaintiff also seeks review of the MSPB decision denying his

21  claims.  Defendant moves for summary judgment on all claims.  Plaintiff opposes the

22  motion.

23                          **DISCUSSION**

24  **Legal Standards**

25      A motion for summary judgment shall be granted where "there is no genuine

26  issue as to any material fact and . . . the moving party is entitled to judgment as a matter

27  of law."  FED. R. CIV. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951

28  _____

          [1] Mr. Daniels and Ms. Meyers wed in June 2005.

(9th Cir. 1978), <u>cert. denied</u>, 440 U.S. 981 (1979).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." <u>Id.</u> (emphasis in original).  The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324, 106 S. Ct. At 2553 (citation omitted).  The opposing party also may not rely solely on conclusory allegations unsupported by factual data. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. <u>United States  v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).  Any doubt as to the existence of any issue of material fact requires denial of the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis  in original) (quoting  <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

**The Scope of Plaintiff's Claims**

<u>Discrete Acts of Discrimination</u>

Defendant argues that all of Plaintiff's claims are time-barred with the exception of Plaintiff's demotion claim.  A federal employee must seek EEO counseling within 45 days of the date of the alleged discriminatory act. 29 C.F.R. §1614.105(a)(1).  An employee who fails to timely contact an EEO Counselor regarding an unlawful

employment practice cannot challenge that practice in court.  <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, __U.S. __, 127 S.Ct. 2162, 2166-67 (2007).  The term "employment practice" refers to "a discrete act or single 'occurrence' that takes place at a particular point in time." <u>Id.</u> at 2169.  A plaintiff cannot recover for discrete acts of discrimination as to which timely claims for relief have not been made. <u>Id.</u> ; <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110-11 (2002).  Discrete acts include, for example, employment terminations, failure to promote, denial of transfers, reprimands, and refusals to hire. <u>Id.</u> at 114.

Here, Defendant has come forward with admissible evidence to show that plaintiff filed his EEO charge on April 28, 2004 and that all allegedly discrete acts of employment discrimination are barred prior to March 13, 2004.  The court concludes that the only timely claim relates to Plaintiff's demotion.  All other claims are time-barred under <u>Ledbetter</u> and <u>Morgan</u>.  The starting point in the analysis begins with 29 C.F.R. §1614.105(a)(1) which provides that "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." In <u>Morgan</u>, 536 U.S. 101, the Supreme Court concluded that discrete acts of discrimination are subject to the statutory filing requirements.  The statute there provided that the EEOC charge had to be filed within either 180 or 300 days after an "alleged unlawful employment practice occurred."  42 U.S.C. §2000e-5(e)(1).  The court categorically held that discrete acts of discrimination had to be filed within the appropriate time period. <u>Morgan</u>, 536 U.S. at 110 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify . . . . [and a plaintiff] can only file a charge to cover discrete acts that 'occurred within the appropriate time period." <u>Id.</u> at 114.

Here, the complained of acts of alleged discrimination identified by the Government (reprimands, suspensions, ROCs, Letters of Counseling, extension of the PIP plan for Plaintiff, admonishments, denial of within grade pay increase, and failure

1    to promote) are discrete acts subject to the 45 day EEO counseling period identified in

2    29 C.F.R. § §2000e-5(e)(1).   Consequently, the court concludes that all discrete

3    discrimination claims, except the March 15, 2005 demotion claim, are dismissed with

4    prejudice as untimely.

5         In sum, the only timely discrete act of discrimination is the March 14, 2004

6    demotion.

7         Hostile Work Environment

8         Plaintiff argues that the principles articulated in Ledbetter should not apply to the

9    present case because he alleges a hostile work environment claim not subject to the 45

10   day limitation of 29 C.F.R. §1614.105(a)(1).   A hostile environment claim, in contrast

11   to a discrete discrimination claim, is not based on discrete acts but occurs over an

12   extended period of time and any "single act of harassment may not be actionable on its

13   own." Id. at 115.  In light of the often repeated nature of the hostile work environment

14   claim, an unlawful employment action cannot fairly be said to occur on a particular day

15   or series of days.  Id.  An example of a hostile work environment claim occurs when an

16   individual is subject to racial or sexual epithets in the workplace.  A single epithet may

17   "engender offensive feelings in an employee [but] does not sufficiently affect the

18   conditions of employment to implicate Title VII." Id. (quoting Meritor Savings Bank,

19   FSB v. Vinson, 477 U.S. 57, 67 (1986)).  However, a hostile work environment claim

20   lies when such individual discrete acts occur over a period of time such that the

21   cumulative effect of the individual acts is actionable.  As noted by the Supreme Court,

22         In determining whether an actionable hostile work environment claim
           exits, we look to 'all the circumstances,' including the frequency of the
23         discriminatory conduct; its severity; whether it is physically threatening
           or humiliating, or a mere offensive utterance; and whether it unreasonably
24         interferes with an employee's wok performance.

25   Morgan, 536 U.S. at 116.  In Morgan an employee claimed unlawful employment

26   practices occurred when he was subject to discrete discriminatory and retaliatory acts

27   and had experienced a racially hostile work environment throughout the term of his

28   employment.  The Supreme Court held that claims based upon discrete discriminatory

acts are actionable only if those acts occurred within the applicable statutory filing period.  Hostile work environment claims, in contrast, are actionable for acts occurring beyond the statutory filing period as long as the acts were part of the same hostile work environment and at least one act occurred within the filing period.  Id.

Here, the only evidence cited by Plaintiff in support of his hostile work environment claim is the Plaintiff's declaration.[2]  (Oppo. at p.18:16).  The identified declaration represents that prior to his transfer to the supervisory position of Team Coach he received "fully satisfactory appraisals" but that after he informed management of his workplace relationship with Ms. Pastorek he was treated differently.  In his new position as Team Coach he met frequently with management (Ms. Myers and Mr. Daniels) and during these meetings "Mr. Daniels was hyper-critical" of his performance.  (Ramirez Decl. ¶12).  After Mr. Daniels was informed of the workplace relationship Mr. Daniels "was openly hostile to" Plaintiff.  "He criticized everything I did, including the minutia of my job; things that I had been doing without problem for years were suddenly 'unacceptable.'"  Id.  Mr. Daniels complained of the format used to create a report and when he turned in late reports, "even though before I informed him of my relationship with Ms. Pastorek, such reports could be turned in days late or even skipped altogether.  It was as if I could do nothing right.  He simply screamed at me during most of these closed-door meetings."  Id.  Plaintiff also declares that after the disclosure of his workplace relationship, he was ignored at the weekly meeting of coaches and others with supervisory functions.  (Ramirez Decl. ¶13).  Plaintiff also represents that his unit was generally meeting its goals.  After his workplace relationship was disclosed, "Mr. Daniels was quick to publically point out during these meetings any perceived minor problems with my unit's operation."  Id.  Plaintiff's declaration, (Ramirez Decl. ¶¶12, 13), attributes such criticisms and comments to the

---

[2] Although Plaintiff urges this court to accept the hostile work environment claim because the agency accepted this claim at the administrative level, counsel for Plaintiff at the time of oral argument acknowledged, in essence, that his hostile work environment claim is weak and that the crux of his case is the demotion claim.  Moreover, this court does not defer to the agency's determinations, rather the court exercises de novo review in the present case.

06cv0546

fact that he informed management that he was having a relationship with a younger co-worker.  Notably absent are any allegations that he was treated differently on account of his national origin or age.

Viewing additional circumstances, Plaintiff identifies the statements of a co-worker who stated that when he first came to the San Diego VA office in his current position, Daniels made statements to the effect that he got rid of the "old-times" at the Albuquerque VA (Daniels prior place of employment).  Plaintiff also submits evidence that Daniels made an age-related comments.  (PSSMF 105).  Those statements were to refer to older employees as "old dogs," " you can't teach dogs new tricks," and a reference to older employees as "deadwood."  (PSSMF 106-110).  With respect to the racial claim, Myers once made a remark about the "Filipino Mafia," and once stated that Ramirez appeared to be operating on "Filipino time."   The court notes that these comments appear to be relatively isolated events, not directed towards Plaintiff, and the comments were non-threatening.  See Morgan,   536 U.S. 116; Mondero v. Salt River Project, 400 F.3d 1207, 1213 (9th Cir. 2005) (alleged discriminatory comment not tied directly to challenged adverse employment action did not create issue of material fact).  Moreover, Plaintiff fails to provide context in which to view the majority of these isolated statements.

According to Plaintiff, the hostilities suffered in the workplace were the result of the disclosure of his relationship with a younger co-worker, 21 years his junior.  (Ramirez Decl. ¶¶12, 13).  The conduct of a highly critical supervisor, like that alleged by Plaintiff against Meyers, (Ramirez Decl. ¶¶12, 13), may engender offensive feelings in an employee but does not sufficiently affect the conditions of employment to implicate either ADEA or Title VII.  See Morgan, 536 U.S. at 115.  Congress passed the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment."  29 U.S.C. §621.  Plaintiff himself attributes the alleged discrimination not to his age or

national origin, but to the fact of his relationship with a co-worker.  Plaintiff repeatedly attributes the change in his fully satisfactory work-place appraisals to the disclosure of his relationship with Ms. Pastorek.  (Ramirez Decl. ¶12, 13).   This is the type of circumstantial evidence generally considered too indefinite and insubstantial to create a genuine issue of material fact in the employment context.   Coghlan v. American Seafoods Co., LLC., 413 F.3d 1090,1095 (9th Cir. 2005) ("when the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment").

The circumstances of alleged hostile work environment here do not appear to be the type of conduct that Congress targeted when it sought to promote employment based upon ability, and not age. See 29 U.S.C. §621.  The evidence submitted by Plaintiff fails to link the hostilities suffered by him to any right protected by ADEA or Title VII. Rather, Plaintiff himself attributes the hostilities suffered to his workplace relationship with a younger coworker.  (Ramirez Decl. ¶¶12, 13).  Further undermining Plaintiff's claim is the fact that his supervisor, Ms. Myers, was instrumental in promoting Plaintiff to Team Coach.[3]  Id. at 1096.  Based on the foregoing analysis, Plaintiff fails to meet his summary judgment burden with respect to establishing a hostile work environment claim.

In sum, the only surviving unlawful employment practice claim is the claim based upon the March 14, 2005 demotion.  The court also grants summary judgment in favor of Defendant and against Plaintiff on the hostile work environment claim.

**The Demotion**

The parties do not dispute that the McDonnell Douglas burden shifting approach applies to Plaintiff's claims.

Under that framework, the burden of production first falls on the

---

[3] Where an individual is responsible for both the hiring and the firing of a discrimination plaintiff, the same actor inference gives rise to a "strong inference [] that there was no discriminatory action".  Coghlan, 413 F.3d at 1096.  Here, the court concludes that the same-actor inference does not apply with equal force to the present case because Ms. Myers, while recommending Plaintiff for the position, (Myers Decl. ¶3), was not solely responsible for Plaintiff's promotion as in Coghlan.

06cv0546

1

2

3

4

5

6

7

plaintiff to make out a prima facie case of discrimination. He may do so by showing that (1) he belongs to a protected class, (2) he was qualified for the position he held (or for the position to which he wished to be promoted), (3) he was terminated or demoted from (or denied a promotion to) that position, and (4) the job went to someone outside the protected class.  The burden of production then shifts to the employer, who must present evidence sufficient to permit the factfinder to conclude that the employer had a legitimate, nondiscriminatory reason for the adverse employment action. Finally, if the employer meets that burden, then the McDonnell Douglas framework drops out of the picture entirely, and the plaintiff bears the full burden of persuading the factfinder that the employer intentionally discriminated against him. Id. at 507-08, 113 S.Ct. 2742.

8   Coghlan, 413 at 1094 (citations omitted).  The court proceeds to apply the McDonnell

9   Douglas framework.

10         The Prima Facie Case

11         Here, Plaintiff clearly establishes that he (1) belongs to a protected class

12   (Filipino) and (2) that he was demoted.  Although a very close call, the court concludes

13   that Plaintiff has come forward with some evidence to establish the other two elements

14   of a prima facie case - whether he was satisfactorily performing the functions of the

15   Team Coach position and whether he was replaced by a younger non-Filipino

16   individual.  The court notes that the Ramirez declarations fail to affirmatively declare

17   that he was satisfactorily performing his job as Team Coach. (Ramirez Decls.). Rather,

18   Plaintiff declares that both prior to and after his time in the Team Coach position, he

19   obtained fully satisfactory or excellent performance reviews in the other positions he

20   held with the VA.  (Ramirez Decl. ¶4; Pl. Exhs. 10-17).  As Plaintiff satisfactorily

21   performed his work related responsibilities adequately in these positions, both prior to

22   and after his time as Team Coach, Plaintiff concludes that a reasonable jury could find

23   from this limited evidence that Plaintiff was satisfactorily performing his job

24   responsibilities as there is some overlap in responsibilities between the position Plaintiff

25   held prior to his promotion (Supervisor Veterans Claims Examiner, Def. Exh. E), and

26   the Team Coach position.[4]  With respect to whether similarly situated non-Filipino or

27   _____

28         [4] While the inferential leap argued by Plaintiff is somewhat of a "stretch," the court is required to construe all reasonable inferences in favor of Plaintiff as the non-moving party.

substantially younger employees were treated differently, Plaintiff fails to direct the court's attention to any evidence supporting this element. However, Plaintiff represents, without citation to the record, that he was replaced by "a white man 40 years his junior." (Oppo. at p.16:16). The court notes that Defendant does not dispute that Scott Fitzgerald, a younger white employee, replaced Plaintiff in the Team Coach position after Plaintiff was demoted. In sum, giving Plaintiff the benefit of all reasonable inferences, the court concludes that Plaintiff has established a <u>prima facie</u> case.

Defendant disputes whether Plaintiff has established a <u>prima facie</u> case by coming forward with evidence to show that Plaintiff was not satisfactorily performing his employment responsibilities and that there is no evidence that Plaintiff was replaced by a younger individual. Whether Plaintiff was satisfactorily performing his employment responsibilities is better discussed in the context of whether Defendant has demonstrated that it had legitimate reasons to demote Plaintiff.

### Legitimacy of the Demotion

Turning to the question of whether Defendant is entitled to summary judgment as a result of establishing legitimate non-discriminating reasons for Plaintiff's demotion, Defendant comes forward with substantial evidence to show that Plaintiff was not adequately performing his employment related responsibilities as Team Coach. The evidence shows that Plaintiff spent two weeks training with his predecessor to the position, Scott Fitzgerald, and that he had access to the Team's Operations Manual and met regularly with his supervisor. The evidence establishes that Plaintiff experienced numerous performance related issues while in the position of Team Coach. (Exhs. Y, Z, AA, AB, AC, AD, AE, AF, AG, AH, AI, AK, AN, AP, AR, AS, AT, AU). Plaintiff also received discipline ranging from a letter of admonishment to a fourteen-day suspension. (Exhs. AE, AW, AY, AZ). Further, the March 15, 2004 demotion memorandum provided to Plaintiff identifies a series of 12 separate instances where Plaintiff's performance fell below that required of the Team Coach position. (Exh.

AV).  The 12 separately identified deficiencies were previously disclosed to Plaintiff on VA Form 119s and Plaintiff signed and acknowledged each write-up.  This evidence strongly supports Defendant's determination to demote Plaintiff and establishes legitimate reasons for the demotion.

In light of Defendant's evidentiary showing, the burden shifts to Plaintiff to demonstrate that the proffered reasons were pretextual.  Coghlan, 413 at 1094.  Plaintiff challenges each of the 12 separate instances of misconduct identified on the VA Form 119s.  (Oppo. at pp.6-9).  In large part, Plaintiff argues and comes forward with some evidence to dispute whether the disciplinary actions were warranted under the circumstances and makes the evidentiary objection that Defendant has failed to present the underlying evidence supporting (or contradicting) the statements contained on the Form 119s.  For example, with respect to the VA Form 119 issued on September 22, 2003, Plaintiff was written up for failing to provide adequate back up training examples as he was instructed to do.  (Def. Exh. 22).  In rebuttal to this write-up, Plaintiff declares that he was deprived of the opportunity to provide adequate training examples because "Mr. Daniels interrupted [his] presentation while [he] was still making [] opening remarks and before [he] had even gotten to the point of presenting any examples of what the staff was to do."  (Ramirez Decl. ¶21).  The court concludes that whether Plaintiff's evidence tends to undermine the validity of this Form 119 presents a genuine issue of material fact.

Other instances of performance deficiencies relate to the preparation of weekly reports.  The Form 119s indicate that Plaintiff failed to provide timely weekly Triage reports and that his reports contained significant errors.  (Def. Exh. 22, VA Form 119s dated 11-10-03, 12-15-03, 1-14-04, 1-20-04, 1-22-04, 2-05-04, 2-18-04).  Plaintiff makes the general claim that Defendant has not submitted supporting documentation to support the statements contained in the challenged Form 119s.  With respect to the 12-15-03 report, Plaintiff does not dispute that he failed to submit timely Triage reports but declares that he requested an extension on the due date for at least one of the

reports. (Ramirez Decl. ¶59).  With respect to the 1-20-04 write-up, Plaintiff indicates that he had a heavy workload and his request for an extension of time was denied even though such requests were routinely granted.  (Ramirez Decl. ¶26). With respect to errors on the reports and their timeliness, Plaintiff generally declares that such reports were routinely submitted late (or not at all) and that he is not sure he was ever shown the actual errors identified on the 2-24-04 write-up. (Ramirez Decl. ¶¶31-33).  Plaintiff also argues that he was required to present both a "Monday Morning Report" and a "Weekly Triage Report" and that other supervisors only had to prepare a "Monday Morning Report."  He also represents that he was treated differently than other supervisors because he had to present a more detailed and complicated report than other supervisors.  (Pl. Exh. 43, pp.504, 434).  The court notes that Defendant has presented evidence that the reports required of Plaintiff were the same reports that Scott Fitzgerald had been providing when he was Team Coach.[5]  (Def. Exh. L, Fitzgerald Depo. at p.20:16-19).

While Plaintiff has not rebutted and created genuine issues of material fact with respect to all of the work-related criticisms set forth on the Form 119s, he does generally present evidence, albeit a thin evidentiary showing, from which a jury could reasonably conclude that some of the Form 119s may have been a pretext for discrimination.  Seen in light of the evidentiary record as a whole, and providing Plaintiff the benefit of every reasonable inference, the court concludes that genuine issues of material facts preclude entry of summary judgment in favor of Defendant on the demotion claim.

In sum, the court grants in part and denies in part Defendant's motion for summary judgment.  The court grants summary judgment on all claims except those claims related to his demotion.

**The MSPB DECISION**

---

[5] The court notes that it is not the role of the court to resolve factual disputes on summary judgment.

In challenging his demotion under the CSRA, Plaintiff must show that MSPB's decision was arbitrary, capricious or an abuse of discretion; obtained without complying with established procedures; or unsupported by substantial evidence.  5 U.S.C. §7703(c); Lindahl v. Office of Personnel Mgt., 470 U.S. 768, 774 n.5 (1985).  In a "mixed case," that is, one involving a challenge to a personnel action and a claim of discrimination, the district court has jurisdiction to review both the lawfulness of the personnel action as well as the discrimination claim.  Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1993).  The discrimination claim is reviewed de novo and the personnel decision is reviewed under the more deferential standard identified above. In reviewing the administrative record, the court must consider evidence in the record that both supports and undermines the Board's decision.  Id,

In Plaintiff's case, MSPB applied the correct legal standard and its decision is supported by substantial evidence.  The MSPB found that the performance standards were valid, the performance standards were communicated to Plaintiff; and that he failed to meet one or more critical elements; and he was provided an opportunity to improve his performance.  (Exh. BC).

In his opposition, Plaintiff does not dispute that the ALJ's decision complied with the requirements of 5 U.S.C. §7703(c).  Rather, Plaintiff contends that he was denied due process in the MSPB action because he was provided with inadequate time to complete discovery.  The ALJ ruled one day before the discovery cutoff date that he could proceed with six depositions even though Defendant sought to preclude the deponents' depositions.  Plaintiff contends that there was insufficient time to complete discovery and therefore he could not adequately prepare his case before the MSPB.

The court concludes that Plaintiff's procedural due process argument is not persuasive.  The MSPB received Plaintiff's appeal on July 1, 2005 and, on July 5, 2005, the Board issued its discovery order requiring discovery to be completed by September 5, 2005.  (MSPB ER, 2297).  On August 5, 2005 the Board set a hearing date of October 5, 2005.  Shortly thereafter, on August 16, 2005, Plaintiff sought to dismiss the action

without prejudice because he needed additional time to complete discovery.  (MSPB ER, 2278-79).  On August 18, 2005 the Board denied the parties joint motion to dismiss the appeal for 60 days, but effectively granted the parties joint motion in part by extending the discovery cutoff date by 45 days and setting a hearing date of November 17, 2005.  (MSPB ER, 2271-72).  On October 6, 2005 Defendant filed a protective order with regards to the depositions of six VA employees.  The Board denied the protective order on or about October 19, 2005 and on October 31, 2005 the Board denied Plaintiff's third motion to delay the hearing and compel discovery.

Here, the court concludes that Plaintiff had an adequate opportunity to conduct discovery yet failed to do.  Plaintiff was not deprived of the opportunity to depose the witnesses yet was dilatory in waiting too long to set the employees' depositions.  The ALJ allowed the parties to conduct discovery over a two month period of time (July 5, 2005 - September 5, 2005), but Plaintiff waited until six of the eight weeks had expired (August 16, 2005) before he moved to dismiss the action in order to complete discovery.[6]  During this period of time it appears as though Plaintiff did not take any steps to depose the six witnesses, nor did he seek to obtain declarations from them even after his third motion to continue was denied on October 19, 2005.  (MSPB ER, 2271-72).  Seen in this light, the Board did not abuse its discretion in denying the motions to continue , see Atchison, Topeka, & Santa Fe Ry. Co. v. Hercules, 146 F.3d 1071, 1074 (9th Cir. 1998) (court has inherent authority to control its docket), nor did it violate Plaintiff's due process rights.[7]

In sum, the court grants summary judgment in favor of Defendant and against Plaintiff on all claims except Plaintiff's March 15, 2004 demotion claim.

---

[6] The court notes that Defendant did not move for a protective order to prevent the depositions from going forward until October 16, 2006.

[7] The court notes that Plaintiff has failed to identify any relevant additional evidence that would have been provided by the six proposed deponents.  In the present case, Plaintiff never moved to take the depositions of the six proposed deponents nor did he submit their declarations.  If the six proposed deponents possessed relevant testimony, one would anticipate that Plaintiff would have taken their depositions in relation to this action.  Accordingly, even if the ALJ committed error, Plaintiff cannot demonstrate any prejudice.

1    **IT IS SO ORDERED.**

2    DATED:  November 27, 2007

3                                          _____
                                           Hon. Jeffrey T. Miller
4                                          United States District Judge

5

6    cc:            All parties

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28